[Crim. No. 2543.   First Dist., Div. One.   Jan. 12, 1949.]

THE PEOPLE, Respondent, v. HENRY LABARBERA, Appellant.

James W. Harvey and E. C. Mower for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

WARD, J. — Defendant was accused of keeping and occupying certain premises containing books, papers and paraphernalia for the purpose of recording and registering bets and wagers upon the purported trial and contest of skill and speed of beasts, to wit, horses. (Pen. Code, § 337a, subd. 2.) A second count charged the recording and registering of bets upon the result and purported result of a trial and contest of speed and power of endurance between beasts, to wit, horses. (Pen. Code, § 337a, subd. 4.) The record discloses that at the time of arraignment the trial court "made an order granting the Defendant's Motion to set aside the Information as to count two (subdivision 4), and denied as to count one (subdivision 2)."

█ The evidence shows that police officers broke into the establishment referred to in count one, which had been rented by defendant. Shortly thereafter defendant entered the premises. After the entry of the police the telephone bell rang several times. The calls were answered by one of the police officers who testified that the telephoning parties desired to bet various amounts on horses, designating them by name or number. The police officers found in the room occupied by defendant certain printed sports reviews and daily bulletins appertaining to horse racing and certain pages containing other matter.

One of the officers who testified qualified as an expert on the contents of certain exhibits found in the establishment and the lettering symbols and marks thereon as records and paraphernalia used in recording and registering bets and wagers on horses running that day on eastern and California race tracks. The above evidence is sufficient to sustain a conviction of keeping and occupying premises with the *purpose* of recording and registering bets and wagers upon a contest between beasts. (Pen. Code, § 337a, subd. 2.) The cause of action alleging a recording or registering of a bet or wager upon the actual or purported result of a contest of speed between horses had been dismissed.

█ The district attorney, in support of subdivision 2 as charged in the information, introduced a record of pages obtained from a second person, in another establishment, which in many instances showed similar bets made on the same day on the same horse in the same race for the same amount by parties with identical names, initials or designations. The records found in defendant's establishment were directly connected with the accusation designated in the information. That identical or similar records were found in another establishment, if properly identified, was a circumstance that might be weighed by the jury as tending to prove that data had been received by the defendant at his place of business for the purpose of recording and registering bets on horse races. This evidence did not prove a second offense as a means of showing a common plan, design or intent to commit the charged offense, but merely that from the additional sheets an inference might be drawn that the two establishments had been in communication. Whether either establishment was conducted upon the "lay off" plan (see *People* v. *Oreck,* 74 Cal.App.2d 215 [168

P.2d 186]), is immaterial as far as this case is concerned. However, the jury could have concluded reasonably that the evidence tended to corroborate other evidence proving the charge alleged in the information, namely, keeping and occupying premises *for the purpose* of registering bets on horse races. The documentary evidence tended to prove a material element of the crime charged. (*People* v. *Warnick*, 86 Cal.App.2d 900 [195 P.2d 552].)

■ There is evidence that the proprietor of the *other* establishment was arrested on the same day shortly prior to defendant's arrest. These details of the "other raid" were admitted, subject to a motion to strike out such evidence. The record does not disclose a motion to strike out any part of the evidence. "When evidence is admitted at a trial upon condition that it be subsequently connected with other evidence in the case, the burden is upon the person objecting to move to strike it out if the connection be not made, failing to do which he is not in a position to complain of its admission." (8 Cal.Jur., p. 501.) ■ If the evidence is erroneously admitted, appellate courts may use reasonable discretion in the disposition of the problem. In the present case the real, vital question relative to a miscarriage of justice is that some of the evidence introduced was taken from the premises of another party and the statement of the police officer that the "other party" had been arrested. The similarity of the evidence and the inference to be drawn therefrom were proper questions of fact for the jury. The fact that the other party had been arrested, when viewed after an examination of the entire record, does not indicate that the error, if any, "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 4½; *Webber* v. *Webber*, 33 Cal.2d 153, 155 [199 P.2d 934].)

■ The last point presented by defendant appears in the opening brief as follows: "Where a person is convicted of a crime for which the penalty is imprisonment, and no particular fine is prescribed for the offense, a fine of $1,000.00 imposed as a condition of probation is in excess of that authorized by law." Defendant was convicted of a felony punishable by imprisonment in the county jail or the state prison for a period of "not less than thirty days and not exceeding one year." (Pen. Code, § 337a.) His motion for new trial was denied but subsequently he was granted probation for two years and as a condition of probation it was ordered that he be confined in the

county jail for a period of six months and pay a fine of $1,000 through the probation department. Section 337a does not provide for the imposition of a fine. Where no fine is provided, the court may impose one of $200 in addition to a sentence of imprisonment. (Pen. Code, § 672.) As a condition, in an order granting probation, a defendant may be imprisoned not exceeding the maximum sentence and a fine imposed not exceeding the maximum provided by law. (Pen. Code, § 1203.1.) Here, the maximum fine is designated as $200 (Pen. Code, § 672) and is the only amount that should be imposed as a fine under the order in the present case. (*People* v. *Kuhlman*, 86 Cal.App.2d 566 [195 P.2d 53, 196 P.2d 80].)

The appeal herein is from the "judgment therein entered" and from "an order denying a new trial." No judgment was pronounced in this case and therefore there is no judgment to be reviewed. In the Kuhlman case it is said (p. 603): "There is no finality to an order granting probation, and the imposition of a fine as a condition of probation is not a judgment imposing a fine." The clerk's transcript under the heading "Sentence" sets forth an order for probation. It is not a sentence but is in effect a suspension of sentence. The defendant on his motion, or the court on its own motion, may modify or change the order of probation, or upon a proper and reasonable showing may proceed to sentence and judgment. Any person placed on probation may be brought before the court "if the interests of justice so require." (Pen. Code, § 1203.2; *People* v. *Lippner*, 219 Cal. 395 [26 P.2d 457].)

Section 1203.1 sets forth as one of the terms of probation that the court "may provide for reparation in proper cases." It has been suggested that the difference between the $200 fine and the monetary amount imposed may be considered as "reparation." In a general sense "reparation" means reimbursement to the complainant or to a prosecuting governmental agency. It is not a *fine* "collected . . . as a condition to the granting of probation, or as a part of the terms of probation" which "shall be paid into the . . . general fund, for the use and benefit of the county." (§ 1203.1.) The use of the word "fine" instead of "reparation" has been condemned, but if the word "fine" clearly and definitely shows that it means "reparation" it may be so construed. (*County of Los Angeles* v. *Emme*, 42 Cal.App.2d 239 [108 P.2d 695].)

*In re Trombley*, 31 Cal.2d 801 [193 P.2d 734], involving payment of wages, is pertinent to the question involved herein.

It is there said (p. 803) : "A fine of $100 and a 30-day jail sentence were imposed on each count, but the jail sentences were to be suspended if, within 48 hours, petitioner paid the amounts alleged to be due as wages in the three counts of the complaint." It is further said (p. 812) : "Although there had been no determination in a civil suit of the sums due the employees, the court nevertheless heard the testimony with respect to their claims and could properly consider this evidence in providing for reparation. The conditions imposed do not appear to be unreasonable, and we cannot say that the court abused the discretion conferred upon it by the statute." In the present case the terms of the suspension of sentence do not indicate that $200 was to be used as a "fine" and that the balance of $1,000 was "reparation."

When monetary payments are imposed upon a probationer, the order should indicate whether the payment is reparation or a fine, particularly if the specified amount is greater than the maximum fine. In *In re Basuino*, 22 Cal.2d 247, 254 [138 P.2d 297], it is said : "The law does not favor a construction which would result in holding a judgment void or a formal judicial proceeding meaningless." On the present record before this court no judgment was ever entered. The purported appeal from the judgment must be dismissed and it is so ordered. The order denying the motion for a new trial is affirmed. (*People* v. *Gibbons,* 39 Cal.App.2d 671 [103 P.2d 1005].)

Peters, P. J., and Bray, J., concurred.