[Crim. No. 5075.   Second Dist., Div. Three.   Dec. 15, 1953.]

THE PEOPLE, Respondent, v. TONY F. UNGARO et al., Appellants.

Herbert Resner for Appellants.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants were charged with violating subdivision 1 of section 337a of the Penal Code (bookmaking) and subdivision 3 of said section (receiving money as a wager on a horse race). In Count I it was charged that Tony F. Ungaro violated subdivision 1 on December 10, 1952. In Count II it was charged that he violated subdivision 3 on said date. In Count III it was charged that Tony and Michael M. Ungaro violated subdivision 1 on December 12th. In Count IV it was charged that they violated subdivision 3 on December 12. In Count V it was charged that they violated subdivision 1 on December 13. In Count VI it was charged that Michel violated subdivision 3 on December 13th. In a trial by jury defendants were found guilty as charged. Their applications for probation were denied. Judgment, upon each count, was that each defendant be imprisoned in the county jail for 90 days, said terms to run concurrently. The notice of appeal recites that each defendant appeals from the judgment, verdict, sentence, and order denying his motion for a new trial. Since an appeal from a verdict or sentence is not authorized, the purported appeals therefrom will be dismissed. (*People* v. *D'Elia,* 73 Cal.App.2d 764, 766 [167 P.2d 253].)

Appellants contend that the defense of entrapment was established by the evidence. They argue that the evidence shows that the acts of bookmaking originated as an idea of the police officers, and that the idea was generated by them in the minds of defendants. ''It is true that when the criminal intent originates in the mind of the entrapping person, and the accused is lured into the commission of the offense in order to prosecute him, such entrapment will constitute a defense.'' (*People* v. *Cherry,* 39 Cal.App.2d 149, 151 [102 P.2d 546].)

A police officer testified that on December 9th, about 12:30 p. m., he went into the bar of a café in San Pedro; he saw Michel, who was at the bar, accept $3.00 or $4.00 from one man and a piece of white paper from another man; Michel put the money and the paper with a roll of bills and then placed the bills in his pocket; the next day, December 10th, the officer went to the cafe about 12:30 p.m.; Willie, the bartender, introduced Tony to the officer; the officer showed a piece of paper with ''a selection'' written on it to Tony, who

said that he would "take the bet on the sixth and seventh races" but not on the fourth race; he told the officer to get rid of the paper because they could all be pinched for having it in their possession; the officer gave Tony $5.00, and Tony gave him $1.00; about 30 persons were in the bar, and they had racing forms in their possession; the next day, December 12th, about 12:30 p. m., the officer went to the café; he told Tony that his horse had won, and Tony paid him $4.00; the officer then told Tony that he wanted to bet "Two to win" on a horse by the name of "Mithra," which was running in the fourth race, and he gave Tony $2.00; Tony made a telephone call and then told the officer that if he (Tony) was not there for the pay off, his brother, Michel would be there, and that the officer had been given the code name "Willie X.," because he was a friend of Willie, the bartender; about 2:45 p. m. on that day Michel told him that Tony had said that he (officer) was one of their customers, and Michel also said, "I'll take your money"; the officer told Michel that he wanted to bet $2.00 on a horse by the name of "First Pass" in the sixth race, and he gave Michel $2.00; about 3:45 p. m. on that day the officer told Michel that he wanted to bet on a horse by the name of "White Fleet" in the eighth race; the officer then gave him money for the bet; thereafter he saw another man pass some money to Michel; Michel then wrote something with a pencil on the palm of his left hand, and went to the telephone booth; while he (officer) was in the café on that day he saw Michel and Tony take money from approximately fifteen men (neither defendant was an owner or employee of the café); On December 13th, the officer went to the café, and about 1:25 p. m. he saw Michel in the telephone booth; Tony asked the officer if he wanted to make a bet, and he replied that he wanted to bet $2.00 on "Beamer's Champ"; thereupon Tony opened the telephone booth and said to Michel, "Two dollars on Beamer's Champ for Willie X."; Tony then told the officer to give $2.00 to Michel; later the officer paid $2.00 to Michel while they were in the rest room; Michel said, "Before I take your money let me wash this chalk off my hand"; then Michel washed his hands; thereafter Michel told him that Beamer's Champ had won; the officer then said he wanted to bet on "Respondent and Clara D."; Michel paid him the difference between the amount of that bet and the amount he had won; later the officer told Michel that he wanted to bet $2.00 on a horse by the name of "Lovely Sight," and he paid $2.00 to Michel.

On the days, above referred to, the officer was not wearing an officer's uniform—he wore a khaki shirt, khaki trousers, and a green jacket. On cross-examination he testified to the effect that he led Tony to believe that he was a seaman who was waiting for a ship to come in; it was his purpose to deceive Tony and to try to make a bet with him; he solicited all the bets except one.

Appellants' contention that entrapment was established is not sustainable. The evidence shows that the intent to commit the offenses originated in the minds of the appellants and that it did not originate in the mind of the officer. It appears that appellants willingly committed the offenses. " 'Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment [citations] . . .' " (*People* v. *Roberts*, 40 Cal.2d 483, 489 [254 P.2d 501].)

Appellants contend further that the court erred in allowing a police officer to answer a hypothetical question regarding bookmaking. They argue that the question called for an opinion as to the ultimate fact which was to be determined by the jury, namely, whether the alleged acts constituted bookmaking and receiving wagers. Another officer, after having qualified as an expert in the manner in which bookmaking in conducted in Los Angeles County, was asked to make assumptions of facts which were in substance as follows: That in a public bar a man approached another man said, "give me three dollars across the board on White Fleet in the 8th race"—one to win, one to place, and one to show; that the man so spoken to had a chalky material on the palm of his hand and he appeared to make marks with a pencil in the chalk; that he then took $3.00 from the man who spoke to him, went to a telephone booth, and made a telephone call. He was also asked to consider, in connection with said assumptions, People's Exhibit 3 which is a page of a newspaper of December 12, 1952 (on that page the name White Fleet is listed in the eighth race at Tanforan Track). The officer was then asked if he had formed an opinion as to the significance of those circumstances. He replied in the affirmative. Counsel for appellants objected to the question and answer upon the grounds that the question was not a proper hypothetical question, in that it did not set forth the facts as they had been "elicited from the witness," and that the case was not one which "calls for any kind of a hypothetical question." They did not assert wherein the question was not based upon the

facts as shown by the evidence. The objection was overruled. The witness then testified that in his opinion those facts regarding a bet across the board would indicate a bet on White Fleet, running in the eighth race at Tanforan on December 12; that the writing in the hand "on the chalk" would be the recording of the wager; and that having a telephone conversation would be calling the bet into "a phone spot." Appellants do not contend on appeal that the facts asumed in the hypothetical question were not based upon the evidence, but they contend that this is not a proper case for a hypothetical question. ▮▮▮ They argue in effect that the testimony of a bookmaking expert should be limited to an opinion as to the meaning of letters and figures appearing on betting markers and similar documents. Subdivision 1 of section 337a of the Penal Code provides in part as follows: "Every person, 1. Who engages in pool-selling or book-making, with or without writing . . . Is punishable by imprisonment. . . ." As stated in *People* v. *Burch*, 118 Cal.App.2d 122, at page 124 [257 P.2d 44], that provision "states clearly that the offense of bookmaking can take place without a writing. There is no requirement that the bet be recorded." It was stated further therein, in quoting from a New York case involving an identical statute (p. 124), " 'The term [bookmaking] itself implies that some written memoranda be used. However, the Legislature, in order to cope with the clever devices and subterfuges employed, amended the section and gave a new meaning to the word bookmaking. . . . It is clear, therefore, that oral bookmaking is as much a violation of the statute as is written bookmaking.' " The part of the hypothetical question relative to writing with pencil on a chalky material in the palm of the hand was not based upon the evidence. ▮▮▮ The officer was asked the following question: "And did you see him do anything at all that you know of?" He answered: "I observed him write either numbers or figures—write something on the palm of his left hand with his right hand, his palm being covered with a white chalk, using a pencil and recording something. I don't know what it was." The answer was stricken out, except the portion thereof to the effect that he saw him writing in his hand. Furthermore, there was no evidence as to what was written. The opinion evidence regarding the writing in the palm should not have been received. Also the opinion evidence regarding the making of a telephone call should not have been received. There was no evidence as to what was

said on the telephone. The error in receiving such opinion evidence was not prejudicial in view of the strong evidence of guilt. Neither of the defendants testified. Since the defendants could reasonably have been expected to explain or deny the evidence against them, the jury was entitled to consider their failure to testify as tending to indicate the truth of the evidence against them. (See *People* v. *Steccone*, 36 Cal.2d 234, 239 [223 P.2d 17].)

█ Appellants contend further that the court erred in permitting the police officer to testify, over objections by appellants, regarding a conversation between the officer and another witness out of the presence of defendants. The officer (first referred to) testified that on December 10, prior to being introduced to Tony, he went to a pool hall and told a man by the name of Jim that he wanted to make a bet on a horse; Jim told him to write the name of the horse; the officer said, ''Tanforan, first race, Patmon, two to win''; then he gave Jim $2.00, and Jim then walked toward the café. A witness, called by defendants, testified that he was known as Jim; that in December, 1952, that officer gave him $2.00 and told him to place a bet; that he placed the bet with a man by the name of Louie. There was no evidence which connected the said transaction with the defendants. The testimony should not have been received but the ruling was not prejudicial, in view of the other evidence herein.

The purported appeals from the verdicts and sentences are dismissed. The judgments and the order denying the motions for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 14, 1954.