[Crim. No. 5487.   Second Dist., Div. Three.   May 8, 1956.]

## THE PEOPLE, Respondent, v. GEORGE BEAUREGARD, Appellant.

Harrison M. Dunham for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—In Count I of an information, defendant Beauregard and one Hutson were charged with burglary of a shop owned by Mr. Westfall; and in Count II they were charged with burglary of a shop owned by Mr. Jenkins. It was also alleged therein that each defendant had been previously convicted of a felony. Trial by jury was waived. Beauregard was found guilty on Count II, and not guilty on Count I. Hutson was found guilty on both counts. The allegations as to a prior conviction of each defendant were found to be true. Beauregard appeals from the judgment as to Count II.

Appellant contends that the evidence was insufficient to support the judgment.

■ During the night of January 30, 1955, the building in which Mr. Westfall conducted his business as a general contractor was burglarized, and various articles, including two sanders, a drill, outboard motor, checkwriter, and checks,

were stolen therefrom. The next morning Mr. Westfall observed a hole in the back wall.

Also, during the night of January 30, 1955, the building in which Mr. Jenkins conducted his business as a tire dealer was burglarized, and 18 to 22 new tires, a Masonic ring, blank checks, and $150 in bills and silver were stolen therefrom. The next morning Mr. Jenkins observed that there was a hole in the wall.

The two buildings referred to were adjoining buildings, and the wall in which there was a hole was the adjoining wall or wall between the two places of business.

About 1 a. m. on January 31, 1955, two police officers "stopped" an automobile which "coasted through the [boulevard] stop sign" at a public highway intersection. Three persons were in the front seat of the automobile—Hutson was driving, and Beauregard was in the middle, and "a juvenile" was on the right side. Officer Lewis, upon noticing a group of tires in the back seat of the automobile, asked Hutson what kind of tires they were. That officer testified that Beauregard answered the question, stating "I have B. F. Goodrich tires there." The tires were Kelly-Springfield tires. The officers also found a double grinder in the area where the tires were; and in the trunk of the automobile there were other articles, including two sanders, drills, and an outboard motor.

Officer Lewis testified further that, in answer to questions, Beauregard said that he bought the tires from Jack Bale Tire Service, that he had not paid any money to Bale but there was an understanding that he would pay later by working for Bale; in a subsequent conversation at the police station, Beauregard also said that he got the tires from Bale; later, in that conversation, Beauregard said that he bought the tires from Bale's wife; in another conversation at the station he said he had "entered the business establishment at 4400 Firestone [Jenkins' place]" and had taken a number of tires—approximately 12—placed them on the roof of the building, then lowered them to the ground, placed them in the car and drove away.

Officer Taylor testified that he had a conversation with Beauregard on January 31 about 10 a. m.; Beauregard said that, in the late afternoon (of January 30), he had walked to Hutson's residence, picked up the Hutson car, had gone home with it, had done the family shopping, had driven around, and stopped at the tire shop (involved in Count II);

he scaled a wall, got onto the roof, went down a ladder and into the tire shop; he put some tires on the roof, then threw them to the ground and loaded them into the car; then he took some tools and an outboard motor from another part of the same building; as he was going down the street he saw that some of the tires were showing, so he went home and left 10 tires in a garage; then, about 11 p. m., he went to Hutson's house where he stayed about an hour; then they (Hutson, Beauregard and the juvenile) went to Bell, had some coffee, and were traveling toward Beauregard's house when they were arrested. The officer also testified that he was taken to the scene of the burglary, and that Beauregard directed him. He also testified that on January 31, about 3 p. m., he had a conversation with both defendants and the juvenile; that, in the presence of both defendants, the juvenile said that he and Hutson had entered the building (involved in Count I) through a rear door and had knocked a hole in the wall; Hutson climbed through the hole, opened the door of the tire shop and let him (juvenile) in; Hutson made no reply to that statement; Beauregard said, in effect: "Why are you trying to take the blame for me? I did all this."

Officer Barnes testified that, when they had Beauregard at the shop, Beauregard showed the rear door to them and said that it was unlocked when he got there and he did not know how the marks got on the door; Beauregard also said that he did not know how the hole got in the wall, and he went into the tire shop through the door; the juvenile, in the presence of both defendants, said that he and Hutson put the marks on the door before they cut the hole in the wall; Hutson made no reply thereto; Beauregard asked (the juvenile) "why he was trying to take the blame for him, he did it."

Beauregard did not testify. His father testified that he picked up his son, about 8 p. m., on January 30, 1955; he also picked up his other son, and that the three of them went riding, went to his (father's) house and eventually went to appellant's house; he (father) stayed there until approximately 11:15 p. m., and he did not see appellant driving a car on January 30.

Defendant Hutson testified that on said January 30, about 11 p. m., while he was at a restaurant, a man (stranger) asked him if he wanted to buy some tires; Hutson and the man went in Hutson's car to a place on Firestone Boulevard

in South Gate where the tires were on a vacant lot; Hutson bought 17 new tires from the man for $50; he also bought a Masonic ring from the man for $1.00; the man asked him to keep some equipment for him; then Hutson took the man back to the restaurant; Beauregard was not with Hutson during that part of the evening, and was not with Hutson until approximately 12:45 a. m.; Hutson took the tires to Beauregard's house that night; in taking the tires there he made different trips, and he left the first load in Beauregard's garage.

Appellant's argument, with reference to insufficiency of the evidence, is to the effect that the statements of appellant, allegedly made to the officers, bear ''the stamp of inherent improbability'' or may be said to be ''unbelievable per-se''; and that appellant was assuming the ''blame for burglaries'' which he did not commit. When the automobile, in which there were stolen tires, was stopped, appellant said he had ''B. F. Goodrich tires there.'' The tires were Kelly-Springfield tires. Appellant said that he bought the tires from Jack Bales. Later, he said he bought them from Mrs. Bales. Some of the stolen tires were in appellant's garage. He directed the police to the burglarized tire shop. It thus appears that appellant was in possession of tires that were taken from the burglarized tire shop, that he made contradictory statements regarding them, and he knew the location of the tire shop. Of course, it is not inherently improbable, or unbelievable, that appellant made the admissions which the officer said that he made. Appellant's failure to testify could have been considered by the trial judge ''as tending to indicate the truth of'' the evidence presented against him. (See *People* v. *Steccone*, 36 Cal.2d 234, 239 [223 P.2d 17].) The evidence was amply sufficient to support the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.