[Crim. No. 5905.   Second Dist., Div. Two.   July 16, 1957.]

THE PEOPLE, Respondent, v. JAMES LIMA, Appellant.

Frank Desimine for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

MOORE, P. J.—Convicted of having recorded a bet and a wager on the result of a trial and contest of speed and power of horses (Pen. Code, § 337a, subd. 4), appellant now demands a reversal of the judgment on the ground that the evidence was insufficient to justify a conviction.

On the contrary, it was not difficult readily to obtain all the evidence reasonably required to warrant such conviction. Deputy Sheriff Earl telephoned Atlantic 1-8242. Appellant answered: "Hello."

EARL: "This is Rocky for Jo-Jo. I want two dollars to place Market Basket in the seventh and two across on In Regards in the seventh."

APPELLANT: "Okay."

Thereupon, Earl signaled the deputies who had maintained surveillance of the premises to enter them and arrest appellant. There the officers found appellant seated at a desk with the Atlantic telephone in his hand. At the same time he dropped a scrap of paper to the floor which paper contained a bet of two dollars on "Market Basket" and a bet across the board on "In Regards." Near the door, outside the shed they took from a five-gallon, open-top can, numerous burnt slips of paper. Among them was one paper but slightly damaged which, when its pieces had been fitted together, proved to be the record of a two dollar bet to win on "Sundisc" in the first race at Hollywood Park the same day. Also, from the waste paper basket in front of the desk of appellant were small particles of paper which, after having been assembled, disclosed wagers on horses that had run on July 4 at Hollywood Park.

When asked by the officers whether he had recorded a bet on the marker which he dropped as the officers entered the premises and how long he had been bookmaking there, he remained silent. Thereupon, many telephone calls were received over the same Atlantic number telephone. While some callers hung up at the sound of the strange voice of the officer, others gave bets on races to be run that very day. Such evidence was abundantly adequate to sustain a finding of guilt.

■ The trial court is the tribunal constituted to determine the facts of a controversy, to draw inferences from those facts and to make conclusions therefrom. When it has found from competent proof that the accused has violated the law as charged in the pleading, in the absence of prejudicial error, its judgment will not be disturbed. When the appeal is grounded upon the insufficiency of the evidence to support the judgment, the sole task of the reviewing court is to determine whether the evidence if believed by a jury is of such serious import as to justify conviction. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Dragoo,* 121 Cal.App.2d 322, 324 [263 P.2d 90]; *People* v. *Whitehurst,* 112 Cal.App.2d 140, 144 [245 P.2d 509].) The evidence received herein was of such character. ■ Officer Earl entered the booth of a telephone near the premises of "Lima Auto Sales"; from his position he could see the exterior of the small building at the rear; he called a telephone number of "Lima Auto Sales"; placed his bets as above recounted. Appellant was in control of the premises wherein were evidences of a "bookie's" shop. The significance of the notations found on the various slips

of paper found in the room was explained by experts on book-making. That they may do so has long been the law. ■ Courts do not take judicial notice of the meaning of the cryptic letters and characters which appear on papers and books of horse-racing gamblers and bookmakers, but to experts on such lore, the symbols are clearly understood and they may explain them to the trial court. (*People* v. *Newman*, 24 Cal.2d 168, 175 [148 P.2d 4, 152 A.L.R. 365] ; *People* v. *Bateman*, 57 Cal. App.2d 585, 587 [135 P.2d 192].) Appellant's conduct and possession of the marker were infallible proofs of his unlawful purpose. (*People* v. *Hinkle*, 64 Cal.App. 375, 380 [221 P. 693].)

■ Moreover, appellant allowed the expert proof and all others to go unchallenged. By reason of his failure to testify, the court properly inferred that his behavior indicated the truth of the evidence against him. (*People* v. *Ungaro*, 122 Cal. App.2d 57, 67 [264 P.2d 145].) After he had been placed under arrest, telephonic calls were received asking to place bets. They were irrefutable proofs of his guilt.

Affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 1, 1957, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1957.