[Civ. No. 1744.  Second Appellate District, Division Two.—February 19, 1929.]

THE PEOPLE, Respondent, v. VINCENT MEILE et al., Defendants; WILLIAM DYER, Appellant.

Joseph W. Ryan for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn and Warner I. Praul, Deputies Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendants were charged by information filed by the district attorney of Los Angeles County with the crime of robbery. The jury returned a verdict of guilty against the defendant William Dyer, who prosecutes this appeal from the judgment and from an order denying his motion for a new trial. The defendant Meile was found not guilty.

That a robbery was committed is not in dispute. On the second day of April, 1928, W. L. Rowley and Mr. Donner, employees of the Pan-American Petroleum Company, started to go to the bank for the purpose of depositing the day's receipts. They had just put a suitcase into the rear of a Ford roadster and a similar bag into the driver's compartment when they were held up at the point of a revolver by two men who had alighted from an old Cadillac touring car which had been driven into the yard by a third man. These men made away with somewhere between ten thousand dollars and twelve thousand dollars n cash and about nine thousand dollars in checks. Meile was identified by the witness Rowley, the cashier of the oil company, who was a man about forty years of age. He, however, could not identify the appellant. The other employee, a young man of twenty years, identified the appellant as the one who was on his side of the Ford, and said that the defendant Meile resembled the man who was on the other side, although he only got a fleeting glimpse of the latter robber. On cross-examination this witness testified that when the appellant approached him, he did so "on a kind of a half run and a half fast walk" crouched, with a tweed cap "flopped down over his face" to about the bridge of his nose, so that he could not see or describe the upper part of his head. Also the witness testified that while he was being held up his back was to Dyer, but that when the latter returned to the Cadillac, which was not over fifteen feet away, the latter ran sideways with his head twisted, watching; that he, the witness, observed him during this return. About a month and a half after the robbery the witness was shown about twenty photographs, among which there were two which resembled the appellant, one a front view and the other a profile, and he was not "sure which was the right man." Some time after the witness saw the pictures, the

witness picked out the appellant from a group of nine or ten men and designated him as one who had participated in the robbery. Evidence was also introduced that on April 4, 1928, two days after the commission of the crime, the appellant rented a safety deposit box of the Security Trust & Savings Bank under the name of William Harris. The appellant testified that he had had an argument with his wife and "for spite" had rented the box for the purpose of putting into it some papers and insurance policies, using the name of Harris in order to prevent his wife from discovering it. Mrs. Dyer testified that about a week later she found out about the box, at which time she was given the right of entry and that her husband had told her he rented it on account of their argument. The defendants presented the testimony of three witnesses, one of whom was a Mrs. de Fillipo, who testified that on April 2, 1928, her husband, who had died before he gave his testimony, her brother-in-law, William O'Brien, and George Costello left her home about 10 o'clock in the morning in a Cadillac automobile and returned about 3 o'clock in the afternoon with the money taken from the Pan-American Petroleum Company, which they divided into three parts, her husband getting about three thousand three hundred dollars or three thousand four hundred dollars. The other two witnesses, inmates of San Quentin, and sentenced to pay the death penalty for a murder committed in Alameda, testified by depositions. One of them, William O'Brien, stated that he and two other men, the names of whom he would not give, were guilty of the particular crime here charged and that the defendants on trial were not guilty. The other convict said that he and O'Brien and de Fillipo staged the robbery. The details recited by them agree, in all major circumstances at least, with those recited by the prosecution witnesses. The appellant also sought by his own testimony, that of his wife and a doctor whom they say was called to attend Mrs. Dyer, to establish that the appellant was at his home at the time of the hold-up.

We have recited the testimony at considerable length for the reason that counsel for appellant argues with all sincerity and earnestness that the testimony is insufficient to support the verdict, and if we were at liberty to weigh the testimony we should be inclined, as we read the record, instead of listening to the witnesses, to agree with him. The very fact,

however, that it is not our privilege or our province to view their demeanor, and judge their credibility is the reason we are not permitted to overturn judgments where there is substantial evidence to support the verdict. The rule is so well known that all that remains for us to do is to determine whether the testimony concerning the identification is substantial. It is positive and direct. There was nothing unfair or unusual about the manner in which the witness Donner picked the appellant from the group which confronted him at police headquarters, or from the photographs which he was shown. There is nothing inherently improbable in the identification even under the circumstances, because it is a well-recognized fact that under the nervous impulse of such an ordeal as the witness underwent during the commission of the offense, impressions are oftimes made, never to be effaced. The human mind at times is photographic in its accuracy, and at other times, to be sure, it seems almost unimpressionable, but whether in a given instance it is one or the other is for the jury to determine. When we find substantial testimony and nothing to indicate that the verdict is the result of passion or prejudice we must rest content with that conclusion.

■ Appellant also argues that the testimony of the prosecution which we have already recited concerning the safety deposit box was improperly admitted over his objection. But in this we cannot agree. The robbery was committed on the second; the rental was two days later under an assumed name. Both the time and the manner of the rental were circumstances admissible on the same theory as flight or concealment of the person. And as was stated by the court in *People* v. *Cox*, 29 Cal. App. 419 [155 Pac. 1010]: "The jury were not compelled to accept the defendant's explanation of why he assumed a false name when traveling with the horse and at the time of the sale and when arrested. They were justified in finding from all of the evidence adduced in the case that, as the verdict implies, his assumption of a false name was for the purpose of concealing his identity and thereby warding off suspicion . . . " So here, the jury may have believed, although the circumstances may be of no great probative value, that the real reason for renting the box on the second day after the crime was committed was for the purpose of enabling appellant to conceal his

ill-gotten gains. That such evidence is admissible, see the additional cases of *People* v. *Cole*, 141 Cal. 88 [74 Pac. 547], *People* v. *Sprague*, 52 Cal. App. 363 [198 Pac. 820], and *People* v. *Frank*, 75 Cal. App. 74 [241 Pac. 924].

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.