[Crim. No. 5076. In Bank. June 27, 1950.]

THE PEOPLE, Respondent, v. BELLA LISS, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

EDMONDS, J.—Bella Liss is charged with the crime of petty theft with prior convictions for felonies. Under section 667 of the Penal Code, the offense for which she is now being prosecuted is a felony. The appeal is from a judgment of conviction, and presents for decision questions as to the sufficiency of the evidence and the nature and effect of an instruction concerning confessions.

The information accused the defendant of wilfully, unlawfully and feloniously taking $27 from Von's Market. She pleaded "not guilty as charged in the information," but admitted the prior convictions in this state for burglary and grand theft. She did not testify at the trial by jury, and no evidence was introduced upon her behalf.

Morris S. Chalphon, a witness for the State, told the jury that he was in a telephone booth in Von's Market between 5:10 and 5:20 p. m. on the day of the alleged crime. The telephone booth was approximately 15 feet from a cash register in the candy department, and was within his view. He saw the defendant go to a cash register in the candy department, ring the two-cent key, and twice take something from the register and place it in her handbag. As this person's back was toward him, he was unable to see what she took.

According to Chalphon, he saw the defendant's features clearly when she passed within 8 feet of the telephone booth immediately after leaving the cash register. As she left the market, the manager of the drug department, Boris Elkin, went to the cash register. He testified that he noticed all of the one and five dollar bills were missing from it. Chalphon then informed Elkin of the incident, and pointed out the defendant, who by that time was 40 or 50 feet from the market.

Elkin testified that he followed and overtook the defendant, who looked over her shoulder at him as he approached and asked him, "What is the matter?" Elkin informed her that

he would like to see her in the store for a minute. The reason for the proposed interview was not mentioned. "What do you want to see me about?" said the defendant. Elkin expressed his preference that they talk in the market. She told him she was in a hurry to get home, and although Elkin insisted it was vital that they talk in the market, she started to walk away. Elkin again caught up with her and stated that if she did not come with him he would call the police officer on the corner. At that point, she said, "All right, I will go back with you then, I want to straighten things out." Throughout this conversation, Elkin had not told defendant his reason for wishing to talk with her.

According to the record, when Elkin and the defendant returned to the market, they were joined by a police officer. In the officer's presence, she was told that she had been seen taking money from the cash register, and that money was missing. She denied having taken any money, and handed her purse to Elkin, who examined its contents. Although Elkin did not count the money, he testified that he noticed several one and five dollar bills "bunched up" in the coin purse. When again asked whether she had taken the money, she replied, "Yes," and explained that she needed funds for her sister. This testimony of Elkin was corroborated at the trial.

After this conversation, the manager of the grocery department joined the group. In the presence of the defendant and the police officer, the two managers checked the cash register, counting all of the money in it. According to their computation, $36.89 was missing. Elkin testified that the tape of the register showed a two-cent item and then the record of a sale made by him just before Chalphon told him of what he had observed from the telephone booth.

Following the check of the register, the group went to the market office, where the defendant offered to return the money if no further action would be taken. The money in the defendant's purse was then examined by the police officer, who counted five $5.00 bills, seventeen $1.00 bills, one half-dollar, one dime, one nickel and seven pennies. Shortly thereafter, the defendant was arrested.

At the police station, the defendant obtained permission to speak with Elkin alone. The latter testified that she said to him, "Will you please have them let me go?" As he related the incident, he replied, "Well, you did take the money didn't you?" She answered, "Yes," and in response to a question as to why she had done so, she told him she was "broke."

The record supports a conclusion that Elkin at no time promised the defendant immunity. According to his testimony, her statements were made freely, voluntarily and without duress, force or promise of reward. Other evidence is to the effect that, in the police station, when one of the arresting officers questioned the defendant as to her motive for taking the money, she told him she was "broke." There is testimony showing that this answer was made without any promise of reward or immunity, and that no force or violence was used to obtain it. The record also shows subsequent conversations at the police station in which the defendant denied taking the money. At this time she was asked why she had offered to return the money. She replied, as stated by an officer, "Just because she was a big-hearted person." Three times at the police station, according to the officer, the defendant gave a false name.

The defendant did not testify at the trial and no evidence was offered upon her behalf, but the prosecution's witnesses were vigorously cross-examined by her counsel at great length. At the conclusion of the evidence the jury was given instructions including one which reads as follows: "If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider all the circumstances connected with the making of the statement, as shown by the evidence. *But even if you should find that a confession was false, either entirely or in part, it remains, nevertheless evidence for your consideration, to be given such significance as your judgment may determine* under instructions." (Italics added.)

By another instruction the jury was told that if a confession of the defendant was not freely and voluntarily given, they must disregard it. A third instruction dealt with the circumstances which, under the law, would bring the statement of a defendant within the category of an involuntary confession.

The jury was also given definitions of confessions, admissions, and instructions relating to the credibility of witnesses and flight. Some instructions offered by the defendant which dealt with admissibility of evidence, the responsibility of the jury, and confessions were refused.

The defendant generally complains that the court erroneously charged the jury and refused to give correct instructions offered by her. She also declares that the verdict is

not supported by the evidence and is contrary to law. However, with the exception of the criticism of the instruction quoted in full, her objections have no foundation. The instructions given fairly stated the applicable rules of law. The rejected instructions were either irrelevant, too broad or adequately covered elsewhere.

In challenging the quoted instruction, the defendant argues that it deprived her of due process of law. There was no showing that the confessions were free and voluntary, she insists, consequently they were improperly admitted as evidence.

The attorney general contends that the judgment of conviction should be affirmed because the record contains sufficient evidence to support the judgment, even apart from any confessions or admissions. He asserts that the instructions given were correct statements of the law. The record amply supports the conclusion that the defendant's statements were free and voluntary, he declares, particularly because she declined to testify to the contrary and introduced no evidence upon her own behalf. Finally he says that the due process requirement was satisfied by the two instructions charging the jurors to disregard any confession not given freely and voluntarily, and informing them as to the circumstances under which a confession would be involuntary.

An involuntary confession is not evidence, and cannot be considered by the jury (*People* v. *Mehaffey,* 32 Cal.2d 535, 548 [197 P.2d 12]; *People* v. *Fox,* 25 Cal.2d 330, 340 [153 P.2d 729]; *People* v. *Jones,* 24 Cal.2d 601 [150 P.2d 801]).

A false confession is, of course, quite different from an involuntary one. Although the involuntary confession, being the product of duress, is of no probative value, a false confession may be admissible for the limited purpose of tending to prove something other than the matter falsely confessed or to discredit the honesty of a witness. As is true of any other false evidence, a false confession cannot support an inference of the truth of the matter untruthfully stated. Obviously, the false confession of guilt of a specific act cannot be used as proof of the commission of that act. If the jury determines that the confession of a given act is false, the confession cannot be considered as tending to prove commission of that act. But, under certain circumstances, the false confession may tend to prove the commission of an entirely different act, or be admissible for the purpose of showing illegal

conduct by a person other than the one who admitted his guilt, or to discredit the witness who made the false statement.

In *People* v. *Ford*, 89 Cal.App.2d 467 [200 P.2d 867], the jury was instructed: ". . . But even if you should find that a confession was false, either entirely or in part, it remains, nevertheless evidence for your consideration, to be given such significance as your judgment may determine under instructions *that I shortly shall give concerning false statements made by a person accused of crime.*" No additional instruction "concerning false statements" was given, and the District Court of Appeal, in holding that the quoted statement to the jury was erroneous, pointed out the unreasonableness of considering a false confession of guilt as an indication of guilt.

Here the trial judge, in effect, told the jury that a false confession may be of some probative value as tending to prove the truth of the matter confessed. But such a confession is not evidence from which the jury may infer that the one who falsified committed the illegal act. When the confession is false, it may not be used to prove the truth of that which has been "confessed." Without explanation concerning the purpose of admitting a false confession the instruction is erroneous, although under certain circumstances, with adequate clarification for the guidance of the jury, it may be given.

If the instruction here challenged was given to inform the jury that a false confession, when relevant, may be used to prove a fact other than the matter confessed, the charge was completely inadequate for that purpose. If the purpose of the instruction was to tell the jury that a false confession may be considered in connection with the issue as to the credibility of a witness, it was likewise incomplete without supplementary explanation.

Under article VI, section 4½ of the Constitution of California, "No judgment shall be set aside, or new trial granted, in any case, on the ground of . . . improper admission or rejection of evidence, or for any error as to any matter of . . . procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In *People* v. *Ford, supra,* ". . . there was only slight circumstantial evidence of defendant's guilt aside from the confession." Here there is an abundance of substantial evidence, entirely independent of a confession, to support the verdict of guilty. The record includes the uncontradicted

evidence that the defendant was at the cash register, and an eye witness described her actions in taking something from it. She was identified by this witness and when the cash register was opened, all of the $1.00 and $5.00 bills were missing from it. In the defendant's purse, seventeen $1.00 bills and five $5.00 bills were found.

In addition to this evidence, the jurors heard testimony to the effect that three times during the questioning of her by police officers the defendant gave a false name. This testimony was evidence tending to show a consciousness of guilt. (*People* v. *Costa,* 137 Cal.App. 617, 619 [31 P.2d 248] ; *People* v. *Meile,* 97 Cal.App. 56, 59 [274 P. 1003].) Also, the defendant did not testify in her own behalf, and her failure to do so could have been considered by the jury "as tending to indicate the truth of such evidence [connecting her with the crime] and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to . . . [her] are the more probable." (*People* v. *Adamson,* 27 Cal.2d 478, 490-491 [165 P.2d 3].)

An examination of the entire record clearly shows that the giving of the erroneous instruction as to false confessions did not result in a miscarriage of justice.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent. In my opinion the instruction here complained of to the effect that a false confession may be considered by the jury in determining the guilt of a defendant, is clearly erroneous and prejudicial and for the reason stated in my dissenting opinion in *People* v. *Woods, ante,* pp. 504, 512 [218 P.2d 981], the judgment should be reversed and defendant granted a new trial.