[Crim. No. 70.   Fifth Dist.   Oct. 28, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CLINTON D. BERTHOLF, Defendant and Appellant.

600

Tom Okawara, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Appellant, charged with the murder of his mother, pleaded not guilty, and not guilty by reason of insanity. Proceedings were instituted pursuant to Penal Code section 1368 to determine whether he was presently sane and able to stand trial. Psychiatrists reported appellant to be

sane, and the court found him sane and able to assist in his own defense. He thereafter withdrew his plea of not guilty by reason of insanity, and proceeded to trial on his plea of not guilty. A jury found him guilty of murder, second degree; judgment was entered pursuant to the verdict, and this appeal followed.

Prior to the murder, appellant, who was divorced, lived with his father and mother in Fresno County near the City of Clovis, some 6 miles from the City of Fresno. The parents operated a tavern, the mother working during the day shift and the father at night. On the night of the murder, the mother had returned from work, eaten dinner, and retired. Before going to bed she rubbed her neck with either Mentholatum or Vicks Vapo-Rub and placed a handkerchief around her neck. When her husband returned home from work around 2 a.m., he found her dead in bed. An autopsy disclosed death by strangulation, apparently by use of the handkerchief. The bedclothing was not in disarray and there was no sign of a struggle, the victim had not been molested sexually and no money had been taken although there was a considerable amount on a table in the house. The only person known to have been in the home before the husband's return was appellant. According to him, he entered the house about 11:30 p.m. and unintentionally awakened his mother when he walked through her bedroom. He testified to a conversation with her during which she criticised him severely, as a result of which he became angry, blacked out, and when he regained awareness discovered he was several blocks away from his home, walking towards Fresno. By a devious route he proceeded to the Greyhound Bus Depot in Fresno. He bought a roundtrip ticket to San Francisco, and shortly thereafter was arrested while still in the depot.

This appeal is taken on the sole ground of insufficiency of the evidence to support the jury verdict of murder, second degree. Appellant concedes that the function of weighing the evidence and resolving conflicts therein lies with the trial court, and that the question on appeal is solely whether there is evidence of a substantial nature that supports the verdict.

It is true, as appellant points out, that the evidence of guilt is circumstantial, but circumstantial evidence will support a conviction of murder if it meets the test of substantiality. (*People* v. *Alcalde*, 24 Cal.2d 177, 184 [148 P.2d 627]; *People* v. *Scott*, 176 Cal.App.2d 458 [1 Cal.Rptr. 600].)

The guilty verdict requires that we view the record

in the light most favorable to the People (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]). █ The record reflects that when accosted by officers in the bus depot and asked his name, appellant, whose true name is Clinton D. Bertholf, replied "Henry" and mumbled an inaudible last name. Giving a false name in this circumstance is evidence tending to show a consciousness of guilt. (*People* v. *Liss*, 35 Cal.2d 570, 576 [219 P.2d 789].)

█ Although appellant lived with his father and mother and had been in the residence talking with his mother that night, he told the officers that he had not been home for two or three days. He also said he had not been within 200 or 300 yards of the house the night of the murder. ██ These were intentional fabrications designed to prevent appellant's connection with a criminal act. As such they were admissible as evidence of consciousness of guilt; the weight to be given them was for the jury to determine. (*People* v. *Ford*, 200 Cal.App.2d 905, 920 [19 Cal.Rptr. 758]; *People* v. *Wayne*, 41 Cal.2d 814, 823 [264 P.2d 547].)

█ When informed that he was being arrested for violation of Penal Code section 187 and asked if he knew what crime was involved, appellant answered that he did not. When told "murder" he asked, "Who?"; the officer replied, "Your mother." Appellant asked, "She's dead? When did this happen?" To which the officer replied, "We believe you can answer that." Appellant then looked away, stared at the baseboard, smiled, and said "You have got me."

Appellant testified that he entered the house around 11:30 p.m.; that his mother gave him a tongue lashing for gambling; that when she accused him of neglecting his two boys and setting a bad example for them, he became very angry and blacked out; that he remembered nothing more until he was walking towards Fresno. During interrogation the following question was asked: "You know at this time that you did kill your mother then, is that right, but you are just— you are assuming that you must have blacked out?" He answered, "I can't say I did and I can't say I didn't."

Two psychiatrists who examined appellant testified that they could find no medical basis for his alleged blackout, and that they disbelieved him as to this episode.

The mother was strangled with a handkerchief which she wore around her neck after applying an ointment. There were stains other than ointment, apparently grease marks, on the handkerchief and exterior of the knot, which were not

accounted for. Two of nine samples of dirt scraped from appellant's hands matched the stains on the handkerchief.

██ The foregoing evidence is substantial, since a reasonable and impartial mind could justifiably draw the same inferences therefrom that the jury necessarily drew in order to arrive at its verdict of murder, second degree. This evidence does not become unsubstantial simply because other reasonable minds might differ as to what inferences should be drawn therefrom, or because this court as a trier of fact might have drawn different inferences. (*People* v. *Robillard*, 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295]; *People* v. *Cullen*, 37 Cal.2d 614 [234 P.2d 1]; *People* v. *Dragoo*, 121 Cal.App.2d 322 [263 P.2d 90]; *People* v. *Scott*, 176 Cal.App. 2d 458 [1 Cal.Rptr. 600].)

██ Since we have concluded that the verdict finds substantial support in the evidence and that the inferences drawn therefrom by the jury were reasonable, it is not our function to determine whether appellant's guilt is established beyond a reasonable doubt; that determination is solely within the province of the triers of fact. (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

Appellant argues that motive was not proved, as no money was taken although it was lying on the table in plain sight, and the victim was not sexually molested. The argument overlooks the testimony of appellant that he became angry when his mother upbraided him for gambling and neglecting his children. Also, one of the psychiatrists testified that appellant was hostile toward his mother. ██ In any event, proof of motive is not essential to sustain a judgment of conviction of murder. (*People* v. *Greig*, 14 Cal.2d. 548, 561 [95 P.2d 936].) This is so even though the conviction is based upon circumstantial evidence. (*People* v. *Planagan*, 65 Cal. App.2d 371, 403 [150 P.2d 927].)

The judgment is affirmed.

Brown (R.M.), J., concurred.