Filed 4/22/15  P. v. Berrum CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL A. BERRUM,<br><br>    Defendant and Appellant. | 2d Crim. No. B253070<br>(Super. Ct. No. BA392467-01)<br>(Los Angeles County) |

Miguel Berrum appeals from the judgment entered after a jury convicted him of the first degree murder of Leobardo Esparza.  (Pen. Code, §§ 187, subd. (a), 189.) Appellant was sentenced to prison for 25 years to life.

Appellant contends that the trial court erroneously admitted evidence of acts of domestic violence that he had committed against his wife.  At a pretrial Evidence Code section 402 hearing,[1] the court ruled that the domestic violence evidence was admissible to support wife's credibility as a witness.  But the court instructed the jury that the evidence was admitted for the limited purpose of showing wife's state of mind toward appellant.  We conclude that the court erred in admitting the domestic violence evidence. The error, however, was harmless.  Accordingly, we affirm.

---

[1] All further statutory references are to the Evidence Code.

*Facts*

Appellant was living in a shed that had formerly been used as a garage. At about 5:00 p.m. on December 31, 2011, appellant and the victim, Leobardo Esparza, entered the shed. Esparza had driven there in his 1992 Caprice.

At about 6:00 or 6:30 p.m. on December 31, 2011, appellant arrived at a New Year's Eve Party driving Esparza's Caprice . Esparza was not with him. Appellant told people at the party that he had received the Caprice in payment for work that he had performed. Appellant installed carpets. Esparza's wife testified that appellant had never performed work for her or her husband. On January 2 or 3, 2012, appellant offered to sell the Caprice to Miguel Arroyo. Arroyo did not purchase the vehicle.

On January 1, 2012, appellant gave a cell phone to Fernando Zavala. Appellant said that it was a gift. Esparza's wife testified that the cell phone belonged to her husband.

On January 2, 2012, Esparza's body was discovered inside appellant's shed. Esparza's wallet was underneath his body. The wallet did not contain any cash. In the morning on December 31, 2011, Esparza cashed his paycheck and received $446.43. Later that day in appellant's presence, Esparza opened his wallet and gave a $20 bill to a neighbor, Esteban Hernandez. Hernandez noticed that "[t]here were a lot" of bills in Esparza's wallet.

Near Esparza's body, the police found two coffee cans filled with cement. A metal pole had been inserted into the cement of each can. Blood on the cans matched Esparza's DNA profile.

Under the driver's seat of Esparza's Caprice, the police found "a leather-like pouch with a utililty-like knife inside." The knife was "a double-sided blade that stays out; hence the leather pouch for it to protect the blade." The knife was used to cut carpets. "[R]eddish-brown specks inside the knife" matched Esparza's DNA profile. A mixture of DNA from two persons was found on the handle of the knife. Appellant was the major contributor of the DNA. Esparza could "not be excluded as a possible minor contributor" of the DNA on the knife handle.

The cause of Esparza's death was "blunt force head trauma" and "multiple sharp force trauma to the head and neck." Esparza had been hit in the head with a blunt object, causing traumatic brain injury and internal bleeding. He had "multiple cuts around the neck" and on his face that were "produced by [a] sharp-edge[d] object," such as a box cutter or utility knife. All four jugular veins were cut and had been "bleeding profusely." "The wound actually went all the way around his throat."

On January 4, 2012, the police went to the home of appellant's sister-in-law, where appellant was staying. The police ordered appellant to come outside, but he refused. The police entered the home and found appellant inside a rear room. Appellant "yelled out 'I'm not Miguel [appellant's first name], I'm not Miguel' and kept repeating that over and over."

*Section 402 Hearing*

The trial court conducted a section 402 hearing on appellant's motion to exclude evidence of acts of domestic violence that he had committed against his wife, Patricia Gomez. She was present at the New Year's Eve Party that appellant attended. The People intended to call her as a witness. Defense counsel argued that the domestic violence evidence is "highly prejudicial" and does not have "any probative effect aside to show that [appellant] possibly has a violent character."

The trial court ruled that the domestic violence evidence was relevant to support Gomez's credibility. The court said that it "will instruct the jury that [the evidence] is being admitted for that limited purpose." The court reasoned: "Well, I've heard the argument in the past that if a witness has been abused in the past, that they are less likely to testify." "That if someone comes forward after that and testifies, that it may add more credibility to the witness' statement."

*Patricia Gomez's Trial Testimony*

The trial occurred in November 2013. Gomez testified as follows: She married appellant in 1995, but they separated in 2004 or 2005. After the separation, Gomez still saw appellant because he would "go to [her] house to see [their] children." In November 2011 Gomez and the children visited appellant at his shed.

On December 31, 2011, Gomez went to a New Year's Eve party at her sister's house.  Appellant was not invited to the party.  Gomez did not want him there "because we had problems."  About a week earlier, a restraining order had been issued requiring appellant "to stay a certain distance away" from Gomez.

Appellant drove to the party in Esparza's car.  Appellant said that he had received the car in payment for work that he had performed.  When appellant arrived at the party, Gomez told him to leave.  But her sister said that "since it was a holiday, that [Gomez] should let him spend time with the children because they were all there."

The leather pouch and knife that the police recovered from Esparza's vehicle were similar to items that belonged to appellant.  He "always had [them] on him" because he used them in his work.

At the conclusion of his direct examination, the prosecutor asked Gomez if appellant had "become abusive" toward her during the marriage.  Upon defense counsel's objection, the court instructed the jury: "This testimony will be admitted only for the purpose of showing this witness' state of mind towards the defendant."  Gomez testified that, after she had been married to appellant for four or five years, he became verbally abusive and would push and shove her.  "[O]n some occasion[s]" he hit her with an open hand.  As a result of his abusive behavior, Gomez became afraid of appellant and decided to separate from him.

*Standard of Review*

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence.  [Citation.]"  (*People v. Waidla* (2000) 22 Cal. 4th 690, 717.)  "A trial court abuses its discretion when its ruling 'fall[s] "outside the bounds of reason." ' [Citation.]"  (*Id*., at p. 714.)

*Erroneous Admission of Domestic Violence Evidence*

The trial court abused its discretion in ruling that evidence of appellant's pre-separation acts of domestic violence was admissible to support Gomez's credibility.   The evidence was not relevant for this purpose.

Only relevant evidence is admissible.  (§ 350.)  Relevant evidence includes "evidence relevant to the credibility of a witness."  (§ 210.)  Section 1101, subdivision (a), which limits the admissibility of character evidence, does not "affect[] the admissibility of evidence offered to support or attack the credibility of a witness."  (*Id*., subd. (c).)  "Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible.  [Citations.]  An explanation of the basis for the witness's fear is likewise relevant to her credibility and is well within the discretion of the trial court.  [Citations.]"  (*People v. Burgener* (2003) 29 Cal.4th 833, 869.)  "A witness who testifies despite fear of [retaliation] of *any* kind by *anyone* is more credible because of his or her personal stake in the testimony. . . . [¶] [T]he jury would be entitled to . . . know not just that the witness was afraid, but also, within the limits of Evidence Code section 352, those facts which would enable them to evaluate the witness's fear."  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368-1369.)

There is no evidence that, when Gomez was called as a witness at the trial in November 2013, she was afraid to testify, she feared retaliation for testifying, or she had been threatened.  Gomez testified that, when she separated from appellant in 2004 or 2005, she feared him because of his acts of domestic violence.  It does not follow that this fear carried over to her trial testimony eight or nine years after separation.

Even if the domestic violence evidence were admissible for the purpose of determining Gomez's credibility, the trial court did not so instruct the jury.  The jury was instructed that the evidence was being admitted "only for the purpose of showing this witness' state of mind towards the defendant."  The court later gave CALCRIM No. 303, which provides: "During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."  "We presume the jury followed the court's admonition" and considered the domestic violence evidence for the limited purpose of showing Gomez's state of mind towards appellant.  (*People v. Burgener*, *supra*, 29 Cal.4th at p. 870.)

The People argue that the admission of the domestic violence evidence and the court's limiting instruction were warranted because "the evidence of appellant's prior acts

of domestic abuse shed light on why Gomez and her family did not want appellant at their family celebration of New Year's Eve." But the reason why appellant was unwelcome at the party is not relevant evidence. It does not have "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.)

*Prejudice*

We apply the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Malone* (1989) 47 Cal. 3d 1, 22.) We will reverse only if "it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) It is not reasonably probable that the jury would have reached a result more favorable to appellant if the trial court had excluded the domestic violence evidence. Indeed, the erroneous admission of this evidence was harmless beyond a reasonable doubt.

The admissible evidence of appellant's guilt was overwhelming. Appellant had a motive to kill Esparza for his money. Appellant was present when Esparza opened his wallet and gave a $20 bill to his neighbor, Esteban Hernandez. Earlier that morning, appellant had received $446.43 upon cashing his paycheck. Hernandez noticed that "[t]here were a lot" of bills in Esparza's wallet. It is reasonable to infer that appellant also saw the bills, since he was standing only about two feet away. Esparza was last seen alive when he entered appellant's shed at about 5:00 p.m. on December 31, 2011. At about 6:00 or 6:30 p.m., appellant arrived at a New Year's Eve party. He was driving Esparza's Caprice. Appellant lied when he said that he had received the Caprice in exchange for work that he had performed. On January 1, 2012, appellant gave Esparza's cell phone to Fernando Zavala. On January 2, 2012, Esparza's body was discovered inside appellant's shed. Esparza's throat had been cut by a sharp instrument. The police found a knife under the driver's seat of Esparza's Caprice. It was similar to a knife that appellant used to cut carpets. Appellant's DNA was found on the handle of the knife. "[R]eddish-brown specks inside the knife" matched Esparza's DNA profile. It is reasonable to infer that appellant used the knife to cut Esparza's throat. It is also

reasonable to infer that appellant hit Esparza on the head with the cement-filled cans that were inside the shed. Blood on both of the cans matched Esparza's DNA profile. Finally, when the police came to arrest appellant, he lied about his true identity. Appellant's lie to the police showed consciousness of guilt. (*People v. Liss* (1950) 35 Cal. 2d 570, 576.)

In determining that the admission of the domestic violence evidence was harmless error, we have also considered that the acts of domestic violence - pushing and shoving and hitting Gomez with an open hand - were insignificant compared to the brutality of Esparza's murder. As appellant notes in his opening brief, "[T]here was not even a remote similarity between [appellant] striking his wife in the past and the brutal murder of Esparza." In addition, the court instructed the jury that the domestic violence evidence was admitted for the limited purpose of showing Gomez's state of mind toward appellant. It is presumed that the jury followed this instruction and did not consider the evidence as tending to show a character trait for violence. (*People v. Burgener*, *supra*, 29 Cal.4th at p. 870.)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

7

Ronald H. Rose, Judge

Superior Court County of Los Angeles

_____

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Marc A. Kohm, Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.