Filed 7/21/22

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.L., a Person Coming Under the Juvenile Court Law. | D079759 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J243890) |
| v. | |
| N.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Francis M. Devaney and Tilisha T. Martin, Judges.  Conditionally reversed and remanded.

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and

---

*	Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I.

Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Minor N.L. appeals from an order adjudging her a ward of the court. (Welf. & Inst. Code, § 602.)[1] She argues: (1) there is insufficient evidence to support the juvenile court's finding that she willfully and maliciously committed felony arson of property (Pen. Code, § 451, subd. (d)); and (2) the case should be remanded for the juvenile court to consider informal supervision under Welfare and Institutions Code section 654.2, applying changes to the law that became effective on January 1, 2022 as a result of Senate Bill No. 383 (2021-2022 Reg. Sess.) (Senate Bill No. 383).

We find sufficient evidence to support the true finding, but we agree that N.L. is entitled to a conditional reversal and remand for the trial court to consider informal supervision under the law as amended by Senate Bill No. 383.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of March 16, 2021, N.L. entered a restroom at a Food 4 Less grocery store in Vista, California. She was alone in the restroom for nearly five minutes. A surveillance videotape from the grocery store showed that the last person who was in the restroom before N.L. had exited three minutes before she entered.

Another customer, O. Perez, entered the restroom just as N.L. was exiting. Once inside, Perez immediately noticed flames reflected in the door of the large, handicapped stall in the rear of the restroom. She looked inside the stall and saw flames and smoke coming out of a trash can in the corner. The flames were about a foot above the trash can. Perez was in the restroom

---

[1] All further undesignated statutory references are to the Welfare & Institutions Code.

2

for about 20 seconds before she left and reported the fire. No one else was in the restroom.

B. Priato was outside in the parking area walking toward the store when she saw N.L. coming in the opposite direction with her older sister, Natalie L. At the adjudication hearing, Priato testified that she was about six to eight feet away from the two girls when she heard N.L. say, " 'I already put the fire in the trash can.' "

A store employee removed the burning trash can and took it outside, where another employee put out the fire with an extinguisher.

When police arrived, they detained N.L. and Natalie. N.L. was dressed in all black. The girls' mother arrived at the scene. She was argumentative and instructed the girls not to talk to the police. N.L. gave the police multiple different last names and different information about her identity. It took the police about an hour to determine her true identity.

The police searched N.L. and found no matches or lighter, and nothing else that could be used to start a fire. Inside the trash can, the police found restroom items, such as diapers, toilet paper, and tampons. The police were unable to determine what started the fire.

The police interviewed Priato and Perez on body-worn cameras at the scene. Videotapes from the cameras were played at the hearing. Priato told one officer: "I was walking up and I saw a girl with a cart, ah with groceries and she was like waiting for somebody else and when I saw the girl, the one with the black sweater and the glasses, I saw her coming like in a hurry . . . . And then, ah, I was very aware of everything, you know. And I started—, I just walked past them, and she said, 'Oh, ah I lit the fire, there is fire in the . . . [restroom]." Priato also told the officer, "I didn't put [*sic*] so much attention because it was very far away and like I walked past them."

Priato told another officer: "I was on my phone. Um, I was walking, and I looked up and I saw this girl, um this girl was with a cart and her groceries. [¶] . . . [¶] [S]he was like waiting for somebody and um, that's when I saw the girl with the black jacket. [¶] . . . [¶] So, um, I was going up towards the store and then I saw this girl come in a hurry. Like she was like hurrying up. [¶] . . . [¶] And um, I just heard—I don't recall if she said, 'Um, there's fire in the, or I put the fire in the trash—in the can.' I don't recall, it[']s one of those two but they were aware of the fire. . . . Like the girl that was coming was aware of the fire . . . . The one that was coming down, the one with the whole [*sic*] black. And I was aware like—she was the one who said it. . . . She was like, 'Oh, I put—', I think she was letting the other girl know that she put the fire in the can."

Priato testified that her memory was probably best right after the incident.

Natalie testified as a defense witness. According to Natalie, she and N.L. had been shopping at the grocery store. N.L. went to use the restroom while Natalie paid for the groceries. After paying, Natalie waited for N.L. outside. When N.L. came out, she did not mention anything about a fire in the restroom.

In a wardship petition, N.L. was charged with felony arson of property (Pen. Code, § 451, subd. (d)) and misdemeanor reckless setting of a fire (*id.*, § 452, subd. (d)). After a contested adjudication hearing, the juvenile court sustained the petition as to the felony arson count and dismissed the misdemeanor count. Based on the evidence presented, the court found that there was no one in the restroom for at least three minutes before N.L. entered; N.L. was in the restroom for five minutes; and after N.L. exited and Perez entered the restroom, Perez immediately noticed the flames reflected

4

off the stall door. The court concluded: "The only evidence points to the fact that the five minutes was spent by [N.L.] setting that fire somehow. If it were burning while she was in there, she surely would have noticed it. And if she noticed the fire in the [restroom], I don't think she would ignore it and haphazardly tell her sister there's a fire in the [restroom]."

The court also found Priato to be "very, very credible." The court noted: "She was minding her business when the two girls walked past her. And [N.L.] told her sister, 'I lit that fire. I lit the fire.'" The court concluded "that [N.L.] purposely, willfully, and maliciously lit that trash can on fire while she was in that [restroom] for almost five minutes." Thus, the court found "beyond a reasonable doubt that [N.L.] did indeed commit arson that day at Food 4 Less."

At a subsequent disposition hearing, the court adjudged N.L. a ward of the court. (§ 602.) The court committed N.L. to Urban Camp[2] for a period not to exceed 120 days, but stayed the commitment pending further proceedings. The court took custody of N.L. under section 726, subdivision (a)(1), and placed N.L. at home with her mother with "care, custody and control of the minor . . . to be under the supervision of the probation officer."

DISCUSSION

I

N.L. first argues there is insufficient evidence to support the true finding of felony arson because there is no substantial evidence that she "willfully and maliciously" set the fire. We disagree.

---

2    Urban Camp is a rehabilitation facility run by the Probation Department, designed to provide youth with the training and skills necessary for successful reintegration into society.

Our review of the minor's substantial evidence claim is governed by the same standard applicable to adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026 (*V.V.*).) We must determine whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Ibid.*) We presume in support of the judgment every fact that the trier of fact could reasonably have deduced from the evidence. (*Ibid.*) Substantial evidence is evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*Ibid.*)

Our role on appeal is a limited one. If the circumstances reasonably justify the trier of fact's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Medina* (2009) 46 Cal.4th 913, 924, fn. 2.)

A person is guilty of arson when he or she "willfully and maliciously" sets fire to any structure or property. (Pen. Code, § 451.) The term "willfully" means with a purpose or willingness to commit the act; it does not require any intent to violate the law, injure another, or acquire any advantage. (*V.V.*, *supra*, 51 Cal.4th at p. 1027.)

The term "maliciously" refers to either "[m]alice in fact" or "[m]alice in law." (*V.V.*, *supra*, 51 Cal.4th at p. 1028.) "Malice in fact" means actual ill will or intent to injure. (*Ibid.*) "Malice in law" means an intent to do a wrongful act, established either by proof or presumption of law. (*Ibid.*) For arson, malice in law will be presumed or implied from the deliberate and

6

intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right.  (*Ibid*.)

The "willful and malice" requirement for arson "ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; ' "in short, a fire of incendiary origin." ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 88.) However, arson is a general criminal intent crime; the specific intent to burn the relevant structure or property is not required.  (*V.V.*, *supra*, 51 Cal.4th at p. 1027.)

The nature of arson ordinarily dictates that the evidence will be circumstantial.  (*People v. Beagle* (1972) 6 Cal.3d 441, 449.)  Thus, the absence of direct evidence to establish a defendant's guilt does not necessarily require a finding of insufficient evidence.  (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1010.)  "The particular evidence offered to prove the charge must, by necessity, vary from case to case.  Accordingly, there can be no checklist of evidence required to prove the crime."  (*Ibid*.)

Viewing the entire record in the light most favorable to the judgment, we find substantial evidence to support the juvenile court's finding that N.L. willfully and maliciously set the fire.  N.L. was alone in the restroom for nearly five minutes, there was no one else in the restroom for three minutes before she entered, and the flames were burning about a foot above the trash can immediately after she left.  The juvenile court could reasonably infer that N.L. must have known about the fire, but she did not report it to anyone before leaving the store.

As N.L. was leaving the store in a hurry, a witness overheard her telling her sister that she " 'lit the fire' " or " 'put the fire in the trash can.' " The juvenile court could infer that N.L. would not have made such a

7

statement to her sister—while leaving the scene without reporting the fire—if she had not caused the fire herself or if she had done so accidentally or unintentionally. N.L. was also uncooperative and lied to the police about her identity, which supported an inference of consciousness of guilt. (*People v. Liss* (1950) 35 Cal.2d 570, 576.) Moreover, the juvenile court could reasonably conclude that N.L.'s sister was covering up for her when she testified that N.L. mentioned nothing about a fire in the restroom—contrary to the testimony of Priato.

N.L. argues that Priato's testimony that she heard N.L. say she " 'put the fire in the trash can' " is inherently unreliable because Priato was impeached with her prior inconsistent statements to the police. But it was for the juvenile court to resolve these inconsistencies, assess Priato's credibility, and determine which, if any, of her statements were true and accurate. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) After hearing all the evidence, the juvenile court concluded, "I found her very, very credible." It is not our proper function to second-guess the court's credibility determinations. (*In re A.S.* (2018) 28 Cal.App.5th 131, 149.) "We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses." (*Sheila B.*, at p. 199.)

N.L. also argues that her statement that she " 'put the fire in the trash can' " does not necessarily prove she intentionally started the fire. Once again, however, it was up to the trier of fact what to make of Priato's testimony and prior statements, and to consider the totality of circumstances, including that N.L. was leaving the store in a hurry without reporting the fire, and she knew that someone had seen her exiting the restroom where the fire was burning.

Priato told one of the officers at the scene that she heard N.L. say, " 'I lit the fire, there is fire in the . . . [restroom].' " She also testified that her memory was probably best right after the incident. Based on the totality of the evidence, the juvenile court concluded that N.L. said, " 'I lit the fire' "— which can reasonably be interpreted to mean an intentional act. When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363.)

Accordingly, we find substantial evidence to support the juvenile court's finding that N.L. willfully and maliciously set the fire.

## II

N.L. was 16 years old when she committed the charged offense. The probation report states that she had no prior criminal record. At the time of the juvenile court proceedings below, former section 654.3, subdivision (h) made minors who committed a felony offense when they were 14 years or older presumptively ineligible for informal supervision under section 654 or 654.2, except in unusual cases where the interests of justice would best be served.[3] Effective January 1, 2022 (while N.L.'s appeal was pending), Senate Bill No. 383 amended section 654.3 by deleting this provision. As a result, under current law, a minor charged with a felony offense committed at the

---

[3] Former section 654.3 provided in relevant part: "No minor shall be eligible for the program of supervision set forth in Section 654 or 654.2 in the following cases, except in an unusual case where the interests of justice would best be served and the court specifies on the record the reasons for its decision: [¶] . . . [¶] (h) The minor is alleged to have committed a felony offense when the minor was at least 14 years of age."

age of 14 years or older is no longer presumptively ineligible for informal supervision based on his or her age.[4]

N.L. contends that the case should be remanded to allow the trial court to consider informal supervision under Senate Bill No. 383. She argues that this is an ameliorative change in the law that applies retroactively to cases not yet final on appeal under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). The People concede that Senate Bill No. 383 applies retroactively to N.L.'s case and requires a remand for the juvenile court to consider informal supervision. The People contend that we should affirm the juvenile court's finding that N.L. committed felony arson, but remand for the juvenile court to consider informal supervision instead of wardship. We agree that the changes to Senate Bill No. 383 apply retroactively to cases not yet final on appeal, but we find that the appropriate remedy is a conditional reversal and remand.

A. *Background on Informal Supervision*

Section 654 provides that "in lieu" of a section 602 petition to declare a minor a ward of the court, a probation officer may refer the minor to an informal supervision program for services provided by an agency or the

_____

[4] Senate Bill No. 383 also added a new subdivision to Welfare and Institutions Code section 654.3 stating that minors alleged to have committed an offense listed in section 707, subdivision (b), are presumptively ineligible for informal supervision except in unusual cases where the court determines the interests of justice would be best served and the court specifies on the record the reason for its decision. (Welf. & Inst. Code, § 654.3, subd. (b), as amended by Stats. 2021, ch. 603, § 1.) The offenses listed in Welfare and Institutions Code section 707, subdivision (b) include arson causing great bodily injury (Pen. Code, § 451, subd. (a)) and arson causing the burning of an inhabited structure or inhabited property (*id.*, § 451, subd. (b)), but not arson of property (*id.*, § 451, subd. (d)), the form of arson at issue here. (Welf. & Inst. Code, § 707, subd. (b)(2).) Thus, this new provision does not apply to N.L.'s case.

10

probation department.  (§ 654, subd. (a).)  In 1989, the Legislature enacted section 654.2 to permit a juvenile court to order such a program of informal supervision *after* a section 602 petition has feen filed.  (*In re Adam R.* (1997) 57 Cal.App.4th 348, 351-352 (*Adam R.*).)  Under section 654.2, "the court may, without adjudging the minor a ward of the court and with the consent of the minor and the minor's parents or guardian, continue any hearing on a petition for six months and order the minor to participate in a program of supervision as set forth in Section 654."  (§ 654.2, subd. (a).)

Section 654.2 further provides:  "If the probation officer recommends additional time to enable the minor to complete the program, the court at its discretion may order an extension. . . .  If the minor successfully completes the program of supervision, the court shall order the petition be dismissed.  If the minor has not successfully completed the program of supervision, proceedings on the petition shall proceed no later than 12 months from the date the petition was filed."  (§ 654.2, subd. (a).)

When it enacted section 654.2, the Legislature intended to address juvenile delinquency at its earliest signs by providing for a less structured program of informal supervision.  (*Adam R.*, *supra*, 57 Cal.App.4th at p. 352.)  "[T]he procedure contemplated by section 654.2 is a postpetition, preadjudication . . . program of informal supervision.  An order pursuant to section 654.2 essentially places the adjudicatory process on hold in the hope the minor will successfully complete the program of supervision and thereby avoid a judgment altogether."  (*Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 789 (*Ricki J.*).)  Accordingly, a "juvenile court should not make a true finding of guilt on the allegations of a petition and then order informal supervision."  (*Id*. at p. 791.)  "In fact the purpose of the section 654 informal supervision program is to avoid a true finding on criminal

11

culpability which would result in a criminal record for the minor. If the informal supervision program is satisfactorily completed by the minor, the petition must be dismissed." (*Adam R.*, at p. 352.)

In March 2000, the voters enacted Proposition 21 (Prop. 21, as approved by voters, Primary Elec. (Mar. 7, 2000)). Among other things, Proposition 21 amended section 654.3 by adding subdivision (h), which made minors alleged to have committed a felony at the age of 14 or older presumptively ineligible for informal supervision, except in unusual cases where the court determined the interest of justice would best be served. (Former § 654.3, subd. (h).) Proposition 21 stated that its provisions could not be amended by the Legislature except by a two-thirds vote of each house, or a statute that becomes effective when approved by the voters. (Prop. 21, § 39.)

At the time of the juvenile court proceedings below, this provision of Proposition 21 was still in effect, making N.L. presumptively ineligible for informal supervision because she was 16 years old at the time of the offense. Effective January 1, 2022, however, Senate Bill No. 383 eliminated this provision by deleting subdivision (h) of section 654.3. The Legislature enacted Senate Bill No. 383 by votes exceeding two-thirds of the members of each house. As a result, N.L. would not be presumptively ineligible for informal supervision under current law.

B. *Retroactivity of Senate Bill No. 383*

We agree with the parties that Senate Bill No. 383 applies retroactively to cases not yet final on appeal under *Estrada*. In *Estrada*, the Supreme Court held that an amendatory statute lessening punishment for a crime is presumptively retroactive, and in the absence of any contrary indication, applies to all persons whose judgments were not yet final at the time the

12

statute took effect.  (*Estrada*, *supra*, 63 Cal.2d at pp. 744-746.)  For purposes of the *Estrada* rule, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed.  (*People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5.)

The Supreme Court has since "applied the *Estrada* rule to statutes that merely made a reduced punishment *possible*."  (*People v. Frahs* (2020) 9 Cal.5th 618, 629 (*Frahs*).)  In *Frahs*, the court applied *Estrada* to Penal Code section 1001.36, which established a pretrial diversion program for certain defendants with mental health disorders.  The court concluded that *Estrada* applied because the statute "provides a possible ameliorating benefit for a class of persons—namely, certain defendants with mental disorders—by offering an opportunity for diversion and ultimately the dismissal of charges."  (*Frahs*, at p. 624.)  "Moreover, neither the text nor the history of [Penal Code] section 1001.36 clearly indicates that the Legislature intended that the *Estrada* rule would not apply to this diversion program."  (*Ibid*.)  Thus, the court found that an eligible defendant who was convicted before Penal Code section 1001.36 was enacted, but whose case was not yet final on appeal when it became effective, was entitled to a limited remand for the trial court to decide whether he or she should receive diversion.  (*Frahs*, at pp. 624-625.)

The reasoning of *Frahs* logically applies to Senate Bill No. 383's amendment to section 654.3.  Like the mental health diversion program in *Frahs*, informal supervision under sections 654 and 654.2 is a form of pretrial diversion in the juvenile court system.  It places the adjudicatory process on hold to allow the minor an opportunity to complete a program for services, have the section 602 petition dismissed, and avoid a criminal record.  (*Adam R.*, *supra*, 57 Cal.App.4th at p. 352; *Ricki J.*, *supra*, 128 Cal.App.4th at p. 789.)  Senate Bill No. 383's deletion of former section 654.3, subdivision (h)

13

provides a possible ameliorating benefit to a class of juveniles—namely, those alleged to have committed felonies at the age of 14 or older—by abrogating their presumptive ineligibility for informal supervision and making it easier for them to qualify and ultimately obtain a potential dismissal of the charges under section 654.2. The "ameliorative nature" of this change "places it squarely within the spirit of the *Estrada* rule." (*Frahs*, *supra*, 9 Cal.5th at p. 631.) We therefore conclude that *Estrada*'s presumption of retroactivity applies.

The *Estrada* presumption may be overcome by a clear indication of a contrary legislative intent. (*Frahs*, *supra*, 9 Cal.5th at pp. 630-632.) Here there is nothing in the text of Senate Bill No. 383 or its legislative history that rebuts *Estrada*'s inference of retroactivity. The text is silent on the issue. The legislative history indicates that the bill was intended to remove barriers to youth rehabilitation and protect youth from more restrictive judicial interventions by increasing access to informal supervision. (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 383 (2021-2022 Reg. Sess.) as amended Aug. 26, 2021, p. 2) [Arguments in Support].) The legislative history also states that the bill would result in one-time costs for the Department of Justice "to litigate appeals from minors *eligible for* . . . IS [informal supervision] *pursuant to the requirements of this* [bill] but who may have *already been sentenced*." (*Id.* at p. 2 [Fiscal Comments], italics added.) If anything, this language suggests that the Legislature understood minors who had "already been sentenced" and were appealing would become "eligible for" informal supervision under the bill. (*Ibid.*) Accordingly, we find that Senate Bill No. 383 applies retroactively to cases not yet final on appeal.

C. *Appropriate Disposition*

As noted, the People ask us to affirm the juvenile court's finding that N.L. committed felony arson, but remand for the juvenile court to consider informal supervision instead of wardship. As we explain, we conclude that the appropriate disposition is a conditional reversal and remand.

In *Frahs*, the defendant had been convicted and sentenced to prison for two counts of robbery and a related misdemeanor offense. (*Frahs*, *supra*, 9 Cal.5th at pp. 625-626.) On appeal, the Supreme Court found he was entitled to the ameliorative benefit of a pretrial diversion hearing under newly enacted Penal Code section 1001.36. (*Frahs*, at pp. 637-641.) The court concluded that the case should "be restored to its procedural posture *before* the jury verdict for purposes of evaluating defendant's eligibility for pretrial mental health diversion." (*Id*. at p. 639, italics added.) Thus, the court found that the appropriate disposition was to conditionally reverse the defendant's convictions and sentence, with instructions to the trial court to either (a) dismiss the charges if it granted diversion and the defendant successfully completed diversion, or (b) reinstate the conviction and sentence if the court found the defendant ineligible for diversion or the defendant did not successfully complete diversion. (*Id*. at pp. 640-641.)

A conditional reversal is similarly appropriate here. As noted, informal supervision under section 654.2 is designed to take place before the adjudication hearing "to avoid a true finding on criminal culpability which would result in a criminal record for the minor." (*Adam R.*, *supra*, 57 Cal.App.4th at p. 352.) "Thus, a true finding under section 602 is inherently inconsistent with a program of informal supervision under section 654.2." (*In re K.C.* (2013) 220 Cal.App.4th 465, 471.)

15

We cannot leave in place the juvenile court's true finding and its order adjudging N.L. a ward of the court, but also remand for consideration of informal supervision under section 654.2.  These are inherently inconsistent because informal supervision is a form of pretrial diversion that leads to preadjudication dismissal of the charges if successfully completed.  (§ 654.2, subd. (a).)  As with the pretrial diversion program at issue in *Frahs*, the case must be "restored to its procedural posture before" the contested adjudication proceeding.  (*Frahs*, *supra*, 9 Cal.5th at p. 639.)  We will therefore order a conditional reversal and remand similar to what the Supreme Court ordered in *Frahs*.  (*Id.* at pp. 640-641.)[5]

## DISPOSITION

The adjudication and disposition orders are conditionally reversed with instructions to the juvenile court to consider informal supervision for N.L. under Welfare and Institutions Code section 654.2.  If the court orders informal supervision, and N.L. successfully completes the program of supervision, the court shall dismiss the section 602 petition.  If the court does not order informal supervision, or N.L. does not successfully complete the

---

[5]    The People do not argue that there is no reasonable probability the juvenile court would order informal supervision even under the law as amended by Senate Bill No. 383.  According to the probation report, at the time of the juvenile court proceedings, N.L. had no prior record; she had no known history of substance abuse, gang activity, or setting fires; she was a special education student with a learning disability; and she had lost her father several years earlier.  The record does not rule out the possibility that the charged offense was an impulsive and immature act committed by a teenager with no prior history of criminal conduct.  Assuming that harmless error analysis would be appropriate here (a question we need not decide), we find there is a reasonable probability the juvenile court would order informal supervision under the law as amended by Senate Bill No. 383.  However, we emphasize that we are not suggesting or deciding how the juvenile court should exercise its discretion on remand.

program of supervision, the court shall reinstate the adjudication and disposition orders.

BUCHANAN, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.